UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Randy Morris Fuewell, # 279287, | ) | C/A No. 4:12-1004-RBH-TER |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| Lt. J. Thompson; Lt. Donald Gilchrist; | ) | |
| Dr. Kosher; Dr. Koon; | ) | |
| Director Joyce L. Young; Jennifer Franklin; | ) | |
| Capt. Joseph Stevens; V. Aikens, Lt.; | ) | REPORT AND RECOMMENDATION |
| Sgt. Moss; Terry Andrews, HCA, and | ) | |
| T. James, Nurse, Mr. Richardson | ) | |
| Warden Leroy Carledge; Sgt. Terry; | ) | |
| Jane Doe; Dentist at Evans CI in 2003; | ) | |
| Vera Courson, RN; Officer Hines; Dr. | ) | |
| Randolph; Dr. John B. McRee; Dr. Kerbs; | ) | |
| Dr. Thomas Moore; Major Frank Musier; | ) | |
| Ms. Lambert; Ms. Sullivan; Capt. Baldwin; | ) | |
| Sgt. J. Bell; and Cpl. Clarissa Jones, | ) | |
| | ) | |
| Defendants. | | |

_____

## I.  PROCEDURAL BACKGROUND

The Plaintiff, Randy Fuewell, proceeding *pro se*, filed this action under 42 U.S.C. § 1983[1]

on April 13, 2012. Plaintiff filed an amended complaint on October 10, 2012. (Doc. #61). Plaintiff

is a prisoner in the custody of the South Carolina Department of Corrections (SCDC) and housed

at the Ridgeland Correctional Institution in Ridgeland, South Carolina. At all times relevant to the

allegations in this complaint, Plaintiff was housed at McCormick Correctional Institution ("MCCI").

_____

[1]All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of
28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d),DSC. Because this is a dispositive
motion, the report and recommendation is entered for review by the District Judge.

Defendants (except Defendants Koon, Kosher, Krebs, Jane Doe Dentist, and Randolph) filed a motion for summary judgment (hereinafter "Defendants").[2] (Doc. #176). Because Plaintiff is proceeding *pro se*, he was advised on or about June 18, 2013, pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to the Defendants' motion for summary judgment could result in dismissal of his complaint. The Plaintiff filed a response[3] and Defendants filed a reply to the response. (Docs. #184 and #189).

## II.  DISCUSSION

## A.  STANDARD FOR SUMMARY JUDGMENT

The federal court is charged with liberally construing the complaints filed by <u>pro se</u> litigants, to allow them to fully develop potentially meritorious cases.  See <u>Cruz v. Beto</u>, 405 U.S. 319 (1972); <u>Haines v. Kerner</u>, 404 U.S. 519 (1972).  The court's function, however, is not to decide issues of fact, but to decide whether there is an issue of fact to be tried.  The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim,  <u>Weller v. Dep't of Social Servs.</u>, 901 F.2d 387 (4th Cir. 1990), nor can the court  assume the existence of a genuine issue of material fact where none exists.   If none can be shown, the motion should be granted.  Fed. R. Civ. P. 56(c).

---

[2] Defendants Briscoe, Cook, Culbreath, Harmon, Marshall, and Reid were dismissed by Order of October 10, 2012, based on the absence of any allegations against them in the Amended Complaint. (Doc. # 51). A separate report and recommendation will be issued with regard to the Motion for Summary Judgment by Defendants Koon, Kosher, and Krebs.

[3] Plaintiff appears to be raising new allegations in his response to summary judgment that arose after the filing of his Amended Complaint and after he was transferred from MCCI which is not proper, and the court will not entertain new allegations. Additionally, Plaintiff appears to be alleging claims that occurred while at Ridgeland Correctional Institution which is not a part of this action.

The moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. Celotex, 477 U.S. 317. Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine dispute for trial. Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings. See Celotex, 477 U.S. at 324 (Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves). Rather, the party must present evidence supporting his or her position through "depositions, answers to interrogatories, and admissions on file, together with . . . affidavits, if any." Id. at 322; see also Cray Communications, Inc. v. Novatel Computer

Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

## B. ARGUMENT OF PARTIES/ANALYSIS

Plaintiff alleges Defendants violated his constitutional rights by being deliberately indifferent to his medical needs and medical care, and alleges interference with his mail along with conclusory allegations/statements as to several of the Defendants while housed at MCCI. Specifically, Plaintiff alleges that Nurse Tricia James exposed him to severe weather temperatures because she would not give him a wheelchair pass while he was waiting on his orthopedic shoes. He further alleges that Nurse James stopped him from coming into medical in a wheelchair even though he had an injury to his right foot. Plaintiff alleges that he was assaulted with the wheelchair by the same inmate on three occasions, February 2010, February 2011, and June 2011, but was refused medical care for his injuries. Plaintiff alleges Nurse Courson refused to see him while he was suffering from the "abuse" of being assaulted with the wheelchair in February 2010 and did not "do any incident report." (Doc. # 61, p. 1). Plaintiff alleges that Lt. Thompson and other prison officials were aware of the wheelchair attack by another inmate but denied him medical treatment for his injuries. Plaintiff alleges problems with his feet, left back, kidney area, leg pain and joint pain. (Id. at 3). Plaintiff contends that Nurse James attempted to give him 5 units of insulin on January 27, 2012, but he caught the mistake and did not take the shot. Plaintiff states that he refused to take his Neurontin on September 12, 2011, because he thought Nurse James was trying to poison him and his dosage was changed. He asserts that he told Defendant Warden Cartledge that Nurse James was trying to poison him, but Cartledge did not respond. Plaintiff alleges that on September 20, 2011, Doctor Randolph, an eye specialist, told him that he was bleeding behind his eyes but Defendants failed to do anything about it and refused to send him back to Dr. Randolph when he requested to go. Plaintiff alleges that

he has continued to sign up for an appointment to see Dr. Randolph again but has been denied by both nurses and Dr. McRee which is deliberate indifference. Plaintiff also alleges that the Mailroom Director, Joyce L. Young, refused to allow him to debit his card interfering with his ability to mail envelopes and that she holds his legal mail until his court deadlines are almost up. Plaintiff contends that Dr. McRee attempted to prescribe Seroquel to help him sleep but that he cannot take that medicine being a diabetic. Plaintiff alleges that in January 2012, Doctor Moore denied him some medicines he requested such as Allegra for his sinus issues. Plaintiff asserts that defendants have been retaliating against him and have been deliberately indifferent to his medical needs.

Defendants argue they are entitled to summary judgment because the complaint fails to state a claim against them which relief can be granted, the matters do not fall within the scope of 42 U.S.C. 1983, they are entitled to qualified immunity and Eleventh Amendment immunity, Plaintiff has failed to show physical injury, that while acting in their official capacity they are not "persons," and the complaint is frivolous.

**<u>Medical indifference</u>**

Defendants submitted the affidavit of Nadine Pridgen who attests she is employed as Director of Health Information Resources at the SCDC. (Pridgen affidavit, doc. #176-12). As a result of her duties, she obtained the medication records of Randy Morris Fuewell, #279287, which set forth the care and treatment of the Plaintiff at the SCDC from January 1, 2009 to the present and attached them as Exhibit "1". <u>Id</u>.

Defendants submitted the affidavit of Dr. John McRee ("McRee") who attests that he is a general practitioner practicing medicine for thirty-four years. (McRee affidavit, doc. #(176-7). McRee is employed by the SCDC and assigned to MCCI. <u>Id</u>. His duties as a physician with SCDC include diagnosing, treating, and providing medications for inmates. <u>Id</u>. McRee saw Plaintiff on

numerous occasions and reviewed his medical records from January 2009 forward. Id. Since Plaintiff has been in SCDC, he has been seen by medical personnel on a large number of occasions and has in excess of 1700 medical encounters. Id. McRee reviewed a portion of his record beginning in January 2009. Id. McRee attests that often times a nurse will see an inmate on sick call and will place a note in the computer to be reviewed by a physician who will then determine if he needs to see the inmate, prescribe medications or order diagnostic tests, or if some other action needs to be taken. Id. Plaintiff is an insulin dependent diabetic and is seen daily for insulin administration and to have his blood sugar checked. Id. Based on a review of the Plaintiff's records and his recollection, McRee avers that Plaintiff has a history of noncompliance with medical treatment, specifically including where he failed to appear for insulin administration either to have his blood sugar checked or for insulin injections or refused his injections. Id. For example, Plaintiff failed to show for insulin administration on June 14, June 16, June 17, and June 19, 2012, and June 28, 2012, and refused his morning insulin on June 21, 2012. Id. Plaintiff refused his afternoon insulin on June 29 and either failed to show or refused his insulin on July 8, July 11, July 16, July 17, July 18, July 24, July 25, July 26, July 31, August 1, August 8, August 9, August 10, August 13, August 14, August 15, and August 23, 2012. Id. Additionally, nursing personnel observed Plaintiff pushing some of the insulin out of the needle before injection and stated that he was decreasing the dose himself refusing to tell the nurse how much he had pushed out of the needle. Id. Plaintiff has stated to medical that he feels better if his sugar is high which Dr. McRee asserts is potentially harmful and has informed Plaintiff of such. Id. Based on his medical records and McRee's interaction with Plaintiff, he has not been compliant with his diet and has been upset when he was instructed to eat from the diet line in the cafeteria. Id. Based on a review of the medical records, on January 17, 2013, Plaintiff was seen for insulin administration after his transfer to Kershaw Correctional Institution ("KCI") at which time

it was noted to be 281, substantially higher than it should be. Id. Based on Plaintiff's statements concerning food and refusing his dosage of insulin, McRee attests Plaintiff has not been compliant with his medication or diet and has not exercised or attempted to exercise as instructed. Id. Plaintiff was seen in the blood pressure clinic on October 23, 2009, and claimed he was compliant with his medications and diet but did not exercise. Id. On January 17, 2013, nurses noted that they had encouraged Plaintiff to walk around the dorm, but he continued to resist daily exercises. Id. As diabetes worsens, it can lead to other medical problems or cause existing medical issues to worsen. Id. Plaintiff has complained of multiple issues over the years, but has continually complained about pain in his back, knees, feet, ankles, hip and other areas. Id.

During the time Plaintiff was housed at MCCI, Dr. McRee attests he prescribed numerous medications for Plaintiff due to complaints of pain and sent Plaintiff for a number of diagnostic tests including various medications for his complaints of abdominal issues. Id. On January 24, 2012, Dr. McRee ordered laboratory tests after one or more medications were not helpful per Plaintiff. Id. On February 12, 2012, Plaintiff was seen again for complaints of abdominal pain but lab results and urinalysis were all normal. Id. Plaintiff was already taking Prilosec so Dr. McRee ordered an ultrasound of his abdomen which was completed on March 9, 2012, with no abnormal findings. Id. Due to Plaintiff's continued complaints of pain over numerous areas of his body, Dr. McRee placed him on Neurontin which is a medication originally developed to treat seizures but is also now indicated for nerve pain. Id. Neurontin is not on the SCDC drug Zformulary due to its high nature of abuse and is very desirable to inmates. Id. It has a high value in the prison population and inmates will crush and snort Neurontin in order to produce a euphoric effect. Id. Thus, possession of Neurontin by an inmate can create security concern leading to assaults, robbery, murder for hire, etc. Id. Therefore, it is an observed medication in SCDC meaning the inmate is required to take the

medication in the presence of medical personnel. Id. However, some inmates have been able to "cheek" the medication by hiding it in their mouths so that it appears they have swallowed the medication or have used other methods to make it appear they have taken the medication when they have not done so. Id. Thus, the SCDC medical director ordered that when the medication is given it will be crushed and dissolved in water, so inmates will not be able to deceive medical personnel into believing they have taken the medication when they have not. Id. McRee states that this is why the Neuronin was mixed with water as Plaintiff complained in the complaint which is pursuant to instructions from the SCDC Medical Director. Id.

McRee has also placed Plaintiff on numerous other medications due to continued complaints of pain such as Mobic, Meclofennamate, Percogesic, Ibuprofen in addition to the Neurontin. Id. While Plaintiff previously stated that Percogesic was beneficial, that medication is no longer being manufactured. Id. McRee attests that with Plaintiff's medical conditions, he will likely not receive complete pain relief even though he is prescribed pain medication, and his conditions will likely worsen as his diabetes becomes more advanced. Id. It is difficult to impossible to effectively treat diabetes if the patient is not compliant with his diet and medications which has caused or at least contributed to his complaints of pain. Id.

Plaintiff requested special shoes that provide more support which were purchased through the canteen and provided to the Plaintiff. He has also been provided knee braces on several occasions. Id. Plaintiff requested a wheelchair pass so that he could have an inmate push him to medical appointments, meals, etc. Dr. McRee approved the wheelchair pass on a short-term basis on several occasions, but would not approve the use of a wheelchair on a permanent basis because, in his opinion, it would not be beneficial for the Plaintiff. Id. In addition to diabetes and hypertension, Plaintiff stated that he was previously diagnosed with fibromyalgia prior to his

incarceration so that it would not be beneficial for the Plaintiff to be allowed to use a wheelchair at all times which would worsen his overall condition. In Dr. McRee's medical opinion, exercise would be beneficial to his condition and permanent the use of a wheelchair would cause the condition to deteriorate. Id. Plaintiff was transferred to KCI in January 2013, so that McRee has not seen him or had any involvement with his treatment since that time but, in McRee's opinion, he did not need a permanent wheelchair pass while housed at MCCI. Id.

Plaintiff alleges that medical personnel failed to provide him treatment after he was informed on September 20, 2011, by Dr. Randolph, an ophthalmologist, that he had bleeding behind his eye. Id. Based on the medical records, Plaintiff was seen by Dr. Randolph on September 20, 2011, but there is no reference that he had bleeding behind his eyes and instead, Dr. Randolph recommended Plaintiff be prescribed Patenol or its equivalent, to be referred to Dr. Randolph for refraction, and to follow-up in one year. Id. On February 21, 2012, Plaintiff was seen by medical personnel and stated that he wanted to follow-up about the issue of blood in his eyes but was informed medical had no information about this in the system. Id. McRee attests that he has not seen any indication in Plaintiff's medical records that he had blood behind his eyes and it appears that he has received appropriate treatment in relation to his eyes. Id. Plaintiff was seen by Dr. Randolph on May 1, 2012, and there is still no indication of blood behind his eyes. Id.

Defendant McRee attests that he did not witness Plaintiff being struck with a wheelchair by another inmate and has no specific recollection of Plaintiff ever discussing the issue with him. Id. Even if Plaintiff had told him about being struck by a wheelchair, Dr. McRee could not do anything about it if he did not witness it except provide medical treatment for any injuries that may have arisen as a result. Id.

In his opinion, McRee attests that Plaintiff has been provided proper medical care and, at no time, has intentionally taken any action to deny Plaintiff proper medical care. Id. Further, McRee states that at no time has he knowingly violated any constitutional rights of the Plaintiff of which he was aware. Id.

Defendants submitted the affidavit of Tarcia James ("James") who attests that she is a registered nurse employed with the SCDC and assigned to MCCI. (James affidavit, Doc. # 176-9). Her duties include examining, treating, and providing medications for inmates. Id. James attests that she recalls Plaintiff as she saw him personally on a number of occasions. Id. In 2012, there were approximately 60 to 65 insulin-dependent diabetics at MCCI who would receive insulin injections at least once per day. James was assigned to administer insulin and was responsible for either injecting or providing inmates their insulin for self-injection. Id. Plaintiff was not completely compliant with his insulin administration and would fail to show for his insulin injections fairly regularly. Id. James attests that she does not recall any instance where she gave Plaintiff the incorrect dose of insulin and was not aware of this occurring with any nurse. Id. As a nurse, James does not have the authority to prescribe medications, except those specified on standing order, to order diagnostic tests, to order special shoes for the inmate or issue a wheelchair pass. Id. Plaintiff wanted a wheelchair pass, but was not approved by the physician. Id. James does not recall any instance where she refused to allow Plaintiff to use a wheelchair but may have instructed the wheelchair pushers that Plaintiff did not have a wheelchair pass and was not authorized to use a wheelchair. Id. James attests that based on the medical records of September 28, 2011, she saw Plaintiff and he refused to take his afternoon dose of Neurontin because he stated he did not see the pills before they were crushed. Id. Neurontin is a medication that is very desirable to inmates and has a high value in the prison population being subject to abuse. Id. Therefore, Neurontin is an

observed medication and has to be crushed and dissolved in water pursuant to orders of the SCDC Medical Director. Id. The Plaintiff became irrate and began cursing James in relation to this incident and left the building. Id.

James attests that Plaintiff complains about an incident on September 12, 2011, but based on the medical records, he was not seen by medical personnel on September 12, 2011, and she has no knowledge of what Plaintiff is referring to when he states that she asked for a "cup of foam." Id. Even though Neurontin was crushed and mixed with water, she does not recall ever referring to it as foam. Id. James contends that she never witnessed another inmate run over Plaintiff's foot with a wheelchair but recalls he did state this happened. James states also that she recalls an instance where Plaintiff was placed in Crisis Intervention and based on his medical records, the date was July 2, 2012. Id. Inmates are placed on Crisis Intervention in situations where they are considered to be suicidal or a potential harm to themselves so that they can be monitored more closely. Id. Plaintiff informed James on July 2, 2012, that he felt suicidal. As a result, she notified Dr. McRee who placed Plaintiff on Crisis Intervention. She asserts that this was based on Plaintiff's statements not due to retaliation. Id. James attests that she has acted in accordance with generally accepted medical practices and has never intentionally taken any action to deny Plaintiff proper medical care. Id.

Defendants also submitted the affidavits of Terry Andrews and Vera Courson who both attest they are employees of the SCDC and are registered nurses assigned to MCCI. Both of their affidavits contain the same information as set out in James' affidavit above so it will not be repeated. (Docs. #176-8 and #176-10). Additionally, Courson attests that she does recall that Plaintiff stated when he was present for insulin administration that another inmate ran over his foot with a wheelchair but that she did not witness any such event. (Doc. #176-8).

In the case of Estele v. Gamble, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of pain," Id., quoting Gregg v. Georgia, 428 U.S. 153, 169-73 (1976). The court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. . . . We therefore conclude that deliberate indifference to serious medical needs of a prisoner constitutes the "unnecessary and wanton infliction of pain," Gregg v. Georgia, supra, at 173, (joint opinion), proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

Estelle, 429 U.S. at 103-105. (Footnotes omitted)

Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the court was careful to note, however, that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation:

> . . . a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Estelle, 429 U.S. at 107.

The Court of Appeals for the Fourth Circuit has also considered this issue in the case of Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). In that case, the court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness (citation omitted), . . . nevertheless, mere negligence or malpractice does

12

not violate the Eighth Amendment." Id. at 851. Unless medical needs were serious or life threatening, and the Defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail. Estelle, supra; Farmer v. Brennan, 511 U.S. 825 (1994); Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986).

Further, incorrect medical treatment, such as an incorrect diagnosis, is not actionable under 42 U.S.C. § 1983. Estelle v. Gamble, supra. Negligence, in general, is not actionable under 42 U.S.C. § 1983. See Daniels v. Williams, 474 U.S. 327, 328-36 & n. 3 (1986); Davidson v. Cannon, 474 U.S. 344, 345-48 (1986); Ruefly v. Landon, 825 F.2d 792, 793-94 (4th Cir.1987); and Pink v. Lester, 52 F.3d 73, 78 (4th Cir. 1995) (applying Daniels vs. Williams and Ruefly v. Landon: "The district court properly held that Daniels bars an action under § 1983 for negligent conduct."). Similarly, 42 U.S.C. § 1983 does not impose liability for violations of duties of care arising under state law. DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189, 200-03 (1989); Estelle v. Gamble, supra, at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.") See also Brooks v. Celeste, F. 3d 125 (6th Cir. 1994) (Although several courts prior to the Supreme Court's decision in Farmer v. Brennan, supra, held that "repeated acts of negligence could by themselves constitute deliberate indifference, Farmer teaches otherwise."); Sellers v. Henman, 41 F.3d 1100, 1103 (7th Cir. 1994) ("If act A committed by the X prison shows negligence but not deliberate indifference, and B the same, and likewise C, the prison is not guilty of deliberate indifference."); White v. Napoleon, 897 F.2d 103, 108-109 (3rd Cir. 1990); and Smart v. Villar, 547 F.2d 114 (10th Cir. 1976) (affirming summary dismissal).

Plaintiff was seen on numerous occasions while at MCCI and set up to receive daily insulin checks and injections. Further, Plaintiff received medication and diagnostic tests, as well as, being seen by an ophthalmologist, oral surgeon, eye doctor, and dentist. Even if Plaintiff's allegations are

true, he has shown nothing more than a disagreement with the medical treatment provided, not that he was completely denied medical treatment. Additionally, Plaintiff has failed to show that he had a serious medical need of which Defendants knew about and consciously ignored. Plaintiff has not shown that any conduct by the Defendants "shocks the conscious" as required by Miltier v. Beorn, supra. "Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice" Jackson v. Fair, supra. The type and amount of medical care is left to the discretion of prison officials as long as medical care is provided. Brown v. Thompson, supra. Any disagreement between an inmate and medical personnel generally fails to state a claim. Although there is nothing to indicate that there were mistakes of medical judgment, even if shown, mistakes of medical judgement are not subject to judicial review in a § 1983 action. Russell v.Sheffer, supra. Moreover, as to any allegations of medical indifference as to Defendants who are non-medical personnel, the claims fail. The Fourth Circuit has held that to bring a claim alleging the denial of medical treatment against non-medical prison personnel, an inmate must show that such officials were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct. Miltier v. Beorn, 896 F.2d 848 (4th Cir.1990). Prison personnel may rely on the opinion of the medical staff as to the proper course of treatment. Id. Under these principles, the Plaintiff has not alleged sufficient facts stating any claim actionable under § 1983 regarding his medical treatment against non-medical personnel.

Based on the evidence presented, there has been no deliberate indifference shown to the overall medical needs of the Plaintiff.[4] For the above stated reasons, summary judgment should be granted in favor of Defendants on this issue.

## Risk of Harm

If Plaintiff is attempting to raise a claim of indifference to a risk of harm pursuant to the Eighth Amendment as to any of the Defendants, the claim fails. To hold a prison official liable under the Eighth Amendment, the prison official must know of and disregard an excessive risk to inmate health or safety. The Supreme Court has defined "deliberate indifference" in the context of the liability of physical injury to an inmate. In analyzing case law, the court concluded that deliberate indifference must be something more than mere negligence, but less than purposeful or knowing conduct. The court held: "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). "Actual knowledge or awareness on the part of the alleged inflicter thus becomes essential to proof of deliberate indifference because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment." Brice v. Virginia Beach Correctional Center, 58 F.3d 101, 105 (4th Cir.1995).

As to any claim Plaintiff is attempting to raise with regard to an Eighth Amendment risk of harm claim, Plaintiff fails to make a showing that any Defendant acted with deliberate indifference to his safety. Plaintiff has failed to make a showing that a Defendant wantonly and obdurately failed

_____

[4] If Plaintiff is attempting to hold any of the Defendants liable for the actions of their employees, the claim fails. Under the doctrine of respondeat superior, an employer or supervisor is not liable for the acts of their employees, absent an official policy or custom which results in illegal action. See Monell v. Department of Social Services, 436 U.S. 658, 694 (1978) and Fisher v. Washington Metro Area Transit Authority, 690 F. 2d 1133, 1142-43 (4th Cir. 1982).

to take precautions for his safety or showed deliberate indifference to a specific known risk of harm, that any official was both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and that they also drew the inference. <u>Farmer</u>, <u>supra</u>; <u>Rich v. Bruce</u>, 129 F.3d 336 (4th Cir.1997) ("A defendant is not subjectively reckless where, although he is aware of the existence of a general risk, he is unaware that his conduct is inappropriate in light of that risk. True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk."). Plaintiff has presented no evidence to show that any named Defendant was deliberately indifferent to a known risk of harm to him from an inmate named Boatwright, or anyone else. <u>Farmer</u>, 511 U.S. at 842

**<u>Retaliation</u>**

Plaintiff attempts to allege that Defendants have been deliberately indifferent to his medical needs and delivered his mail late as forms of retaliation. In his response to the motion for summary judgment, Plaintiff alleges that he was transferred from MCCI to KCI on January 10, 2013, and was then transferred from KCI to Ridgeland Correctional Institution as forms of retaliation. Plaintiff has not alleged or shown that these Defendants were involved in these actions.[5] Additionally, Plaintiff alleges that the Mailroom Director, Joyce L. Young, refused to allow him to debit his card interfering with him mailing envelopes and that she holds his legal mail until court deadlines are almost up. However, Plaintiff's claims of retaliation fail. To state a claim of retaliation under § 1983, a plaintiff must "allege either that the retaliatory act was taken in response to the exercise of a

---

[5] Plaintiff was transferred from MCCI, where the Defendants are employed, to Kershaw Correctional Institution. Plaintiff has failed to allege or show how these Defendants would be involved in him being transferred from KCI to a different institution. Additionally, Plaintiff appears to be raising new allegations in his response to summary judgment which is not proper, and the court will not entertain new allegations. Additionally, Plaintiff appears to be alleging claims that occurred while at Ridgeland Correctional Institution which is not part of this action.

constitutionally protected right or that the act itself violated such a right." <u>Adams v. Rice</u>, 40 F.3d 72, 75 (4th Cir.1994). An inmate must also present more than conclusory accusations of retaliation, <u>Id</u>. at 74, and must provide facts that show the exercise of his constitutional right was a substantial factor motivating the retaliation. <u>See</u>, e.g., <u>Cochran v. Morris</u>, 73 F.3d 1310, 1318 (4th Cir.1996); <u>Hughes v. Bledsoe</u>, 48 F.3d 1376, 1387 n. 11 (4th Cir.1995). Finally, a plaintiff must show that he suffered some adverse impact on the continued exercise of his constitutional rights as a result of the retaliatory conduct. <u>American Civil Liberties Union, Inc. v. Wicomico County</u>, 999 F.2d 780, 785 (4th Cir.1993). As Plaintiff has failed to show a claim of retaliation, it is recommended that his claim be dismissed and summary judgment granted in Defendants' favor on this ground.

Additionally, any claim that Plaintiff attempts to raise regarding interference with his legal mail by Joyce Young[6], Mailroom Director at MCCI, or the "prison officials" fails. Plaintiff asserts that they have withheld his legal mail over the years. Plaintiff alleges that in this case, his legal mail from this court was not received from the mailroom until four days before a deadline in July 2012 so that he requested a ten (10) day extension. An Order was issued in this case on July 10, 2012, instructing Plaintiff to file one complete, concise and clear copy of his amended complaint containing all defendants and allegations that he planned to pursue in this action within ten days of the date of that Order. (Doc. #24). On July 23, 2012, Plaintiff filed a motion for a ten (10) day extension of time to comply with the Order of July 10, 2012. This motion was granted. (Doc. #30).

---

[6] Defendants submitted the affidavit of Joyce Young who attests that she is the mailroooom Director at MCCI and her job responsibilities include supervising the mailroom and the mail clerks. (Doc. # 176-8). Mail, including legal mail, is delivered to inmates each day except on weekends and holidays. <u>Id</u>. If an inmate receives legal mail, the mailroom clerk will send the inmate an order to report and the inmate must sign for the legal mail. <u>Id</u>. An exception to this is when the inmate is housed in the Special Management Unit where legal mail is delivered to the inmate by the mailroom director or the mailroom director's designee. <u>Id</u>. Indigent inmates are required to show that hey have an action pending or are initiating an action in the court or are represented by an attorney and are required to provide proof each time they send legal mail in order for SCDC to pay for postage. <u>Id</u>. Young attests that she acted appropriate in her dealing with the Plaintiff. <u>Id</u>.

As to any claim with regard to access to court, this claim fails. Plaintiff has not shown any actual injury. As to claims of access to courts through legal mail,  prisoners do not have a cause of action under § 1983 for negligent interference by prison officials with their right of access to the courts. Pink v. Lester, 52 F.3d 73 (4th Cir. 1995) ("negligent denial of access to the courts is not actionable under § 1983." ) A prisoner must allege adverse consequence as a basis for allegations that the delay or non delivery deprived him of meaningful access to the courts. White v. White, 886 F.2d 721 (4th Cir. 1989) and Morgan v. Montanye, 516 F.2d 1367 (2d Cir. 1975 ) cert. denied, 424 U.S. 973 (1976). Actual injury must be more than theoretical deficiencies, it is showing that the alleged deficiencies have hindered or are hindering a prisoner's efforts to pursue a legal claim. Lewis v. Casey, 518 U.S.343 (1996). Plaintiff has failed to meet this burden.

**Failure to State a Claim**

Defendants argue they are entitled to summary judgment as to Defendants Lambert, Gilchrist, Bell, Hines, Cartledge, Franklin, Jones, Baldwin, Mursier, Ward, Aikens, Richardson, Thompkins, Stevens, Moss, and Terry because the complaint fails to state a claim against them upon which relief can be granted so that they should be dismissed from this action.

In the Amended Complaint, it is difficult to discern exactly what allegations Plaintiff is attempting to raise as to these Defendants. Allegations against each of these Defendants will be discussed individually in addressing Defendants' argument that these Defendants should be dismissed from this action for failure to state a claim and summary judgment granted in their favor.[7]

---

[7] If Plaintiff is attempting to raised a claim of indifference to a risk of harm as to any of these Defendants, the claim fails. An inmate who has suffered injury must allege and offer evidence that the prison officials "wantonly and obdurately failed to take precautions for his safety in deliberate indifference to a specific known risk of harm. . . ." Ruefly v. Landon, 825 F.2d 792 (4th Cir. 1987). The Supreme Court has defined "deliberate indifference" in the context of the liability of physical injury to an inmate.  In analyzing case law, the court concluded that deliberate indifference must be something more than mere negligence, but less purposeful or knowing conduct.  The court held: "the official must both be aware of facts from which the inference could be drawn that a substantial risk

As to Defendants Dawn Lambert and Donald Gilchrist, it appears Plaintiff alleges they were present in the control room with their back facing Nurse James while James was texting. However, Plaintiff does not set forth any specific action as to Lambert or Gilchrist and fails to raise a constitutional claim.

As to Defendants James Bell and James Baldwin, Plaintiff alleges that they escorted him to lock-up but makes no other specific allegations against Defendants Bell or James.

As to Defendants Curtis Hines and Stanley Terry, Plaintiff appears only to allege that they were present when inmate Boatwright allegedly assaulted him with a wheelchair by running over his foot and/or running into his right side but fails to allege any specific acts against Defendants Hines or Terry. Plaintiff generally alleges that these Defendants were aware that various actions had occurred but fails to show any specifics of any awareness of these Defendants regarding the alleged constitutional violations. Plaintiff has failed to show that these Defendants had actual or constructive knowledge that there was an unreasonable or pervasive risk of constitutional injury to the Plaintiff and that these Defendants acted with deliberate indifference. Further, the Plaintiff has not shown that these Defendants were deliberately indifferent to, or tacitly authorized, any of the alleged actions or inactions of the other Defendants.

As to Defendant Leroy Cartledge who is the Warden at MCCI, Plaintiff alleges that he wrote to Mr. Cartledge advising him that Nurse James was trying to poison him and did not receive a response. Plaintiff does not allege any other allegations against Defendant Cartledge that raises a constitutional claim.

---

of serious harm exists, and he must also draw the inference." <u>Farmer v. Brennan</u>, 511 U.S. 825 (1994). Plaintiff has not met this burden

As to Defendant Jennifer Franklin, Plaintiff makes no allegations against her in the body of his Amended Complaint. Thus, it is recommended that Defendant Franklin be dismissed from this action.

As to Clarissa Jones, Plaintiff alleges that she called him to see Nurse James when he did not want to see her but wanted to see another nurse. Plaintiff makes no other specific allegations with regard to this Defendant and has failed to allege a constitutional violation against Defendant Jones.

As to Defendant Frank Mursier, Plaintiff alleges only that while being escorted to lock-up, he shouted to Mursier that it was retaliation, Plaintiff did not allege that Mursier was the Officer or person that ordered he be placed in lock-up, and fails to make any other specific allegations against Defendant Mursier.

As to Defendant Robert Ward, Plaintiff appears to allege that Mr. Ward failed to properly handle his grievances. This claim fails as there is no constitutional right to participate in grievance proceedings. Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994).

As to Defendant Valorie Aikens, Plaintiff alleges that on May 9, 2012, he asked "I asked I being subject to retaliation or discrimination due to a prior 1983 lawsuit." Plaintiff fails to make any other specific allegations against Defendant Aiken.

As to Defendant Timothy Richardson, Plaintiff asserts that he was a food supervisor on May 31, 2009, when Plaintiff noticed a snack bag that he received was unusually wet because his diet snack had been thrown into the bag unwrapped and that Defendant Richardson stated no-one had contacted him about having the bag replaced. Plaintiff does not make any other allegations against Defendant Richardson or with regard to this issue.

As to Defendant James Thompkins, Plaintiff alleges that he was aware that inmate Boatwright assaulted Plaintiff with his wheelchair but makes no other allegations against this Defendant as to this issue. Plaintiff does not allege that Defendant Thompkins was deliberately indifferent to a risk of harm regarding Inmate Boatwright. Further, Plaintiff alleges Defendant Thompkins escorted him to lock-up but fails to allege any further allegations against this Defendant. Thus, he fails to state a claim against Defendant Thompkins.

As to Defendant Joseph Stevens, Plaintiff alleges that he asked Mr. Stevens if he was being retaliated against and that he was present when Nurse James allegedly almost gave him an incorrect dose of insulin. He makes no further allegations against Mr Stephens other than Mr. Stevens pretended to be on the phone when he turned to him after Nurse James almost gave him the incorrect dose of insulin. Thus, Plaintiff has failed to allege a constitutional violation against Defendant Stevens.

As to Defendant Patricia Moss, Plaintiff alleges only that she was present when Nurse James allegedly gave him a "cup of foam" that Nurse James said was Neurontin. Other than alleging Defendant Moss was present, he does not allege any other specific allegations against Defendant Moss that raises a claim for a constitutional violation.

In conclusion, it is recommended that summary judgment be granted as to Defendants Lambert, Gilchrist, Bell, Hines, Cartledge, Franklin, Jones, Baldwin, Mursier, Ward, Aikens, Richardson, Thompkins, Stevens, Moss, and Terry as Plaintiff has failed to raise a constitutional claim against them.

## C. Qualified Immunity

Defendants deny that any of the alleged conduct or conditions complained of by Plaintiff gives rise to a constitutional violation. However, Defendants assert that, even if this Court concludes that the facts are sufficient to establish a Constitutional claim, they are entitled to qualified immunity.

> The doctrine of qualified immunity attempts to reconcile two potentially conflicting principles: the need to deter government officials from violating an individual's federal civil rights and the need for government officials to act decisively without undue fear of judicial second guessing.

Akers v. Caperton, 998 F.2d 220, 225-26 (4th Cir. 1993).

The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether Defendant is protected by this immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Harlow, 457 U.S. at 818.

In a discussion of qualified immunity, the Court of Appeals for the Fourth Circuit stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

<u>Wiley v. Doory</u>, 14 F.3d 993 (4th Cir. 1994) (internal citations omitted), <u>cert. denied</u>, 516 U.S. 824 (1995). As discussed above, the Plaintiff fails to show that Defendants violated any of his clearly established constitutional or statutory rights. However, even if there was a violation, Defendants are entitled to qualified immunity. Thus, the undersigned recommends that summary judgment be granted as to these Defendants.

### D. Eleventh Amendment Immunity

The Defendants contend that the Plaintiff's §1983 claims against them for money damages in their official capacity are barred pursuant to Eleventh Amendment Immunity. Defendants also argue that the action against them should be dismissed as a matter of law to the extent that they are sued in their official capacity because while acting in their official capacity as an employee of the SCDC they are not a "person" under 42 U.S.C. §1983 and, therefore, not subject to suit.

When a defendant is sued in his or her official capacity, the suit is frequently intended as one against the state, the real party in interest. If review of the pleadings indicates that the state is, in fact, the party being sued, then a judgment awarding damages is precluded by the Eleventh Amendment of the United States Constitution. Although declaratory and/or injunctive relief may be granted, damages may not be awarded against the state.

In the case of <u>Will v. Michigan Department of State Police</u>, 491 U.S. 58 (1989), the Supreme Court analyzed the interplay between § 1983 and the Eleventh Amendment of the Constitution and stated:

> Section 1983 provides a federal forum to remedy
> many deprivations of civil liberties, but it does
> not provide a federal forum for litigants who seek a
> remedy against a State for alleged deprivations of

> civil liberties. The Eleventh Amendment bars such
> suits unless the State has waived its immunity (cites
> omitted) or unless Congress has exercised its
> undoubted power under § 5 of the Fourteenth
> Amendment to override that immunity.

The Eleventh Amendment immunity granted to the states "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes," but the court found that state agencies, divisions, departments and officials are entitled to the Eleventh Amendment immunity. Will, supra at 70. In reaching this conclusion, the court held that a suit against state officials acting in their official capacities is actually against the office itself, and therefore, against the state. State officials may only be sued in their individual capacities.

There is no dispute that Defendants were/are employees of the SCDC at the time of the allegations in the complaint. Thus, they are entitled to Eleventh Amendment immunity from monetary damages in their official capacity.

## E. Pendent Jurisdiction

Assuming Plaintiff's § 1983 claim is dismissed by this Court and Plaintiffs' complaint somehow can be conceived to state an additional claim for relief under any state common law theory, the undersigned concludes that such claim(s), if any, ought to be dismissed as well for want of jurisdiction. Specifically, this Court can decline to continue the action as to the pendent claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c).

## III. CONCLUSION

24

Based on the above reasoning, it is recommended that the motion for summary judgment by Defendants (docs. #176) be GRANTED.[8]

Respectfully submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

October 30, 2013
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**

---

[8] Dr. Randolph has not made an appearance in this case. The USM-285 states that on February 1, 2013, the "SCDC has no record of def. Cannot accept." It then appears that Defendant's wife, one Pat Randolph, was served. (Doc. #99). However, it is recommended that this action be dismissed against Defendant Randolph for failure to state a claim against him upon which relief can be granted. The only allegations against Defendant Randolph in the amended complaint was that he saw Dr. Randolph who allegedly stated that he was bleeding behind his eyes. Plaintiff does not make any other specific/personal allegations against this Defendant. Additionally, the USM-285 as to Jane Doe was returned unexecuted. (Doc. #103).